# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1189V

| | |
|---|---|
| SEMECA JOHNSON,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: November 2, 2023 |

*Edward Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**[1]

      On September 14, 2020, Semeca Johnson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on October 11, 2019, she suffered a right-sided shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the foregoing reasons, I find that Petitioner has established that she suffered right shoulder, arm, and neck pain and limited ROM for over six months, meeting the Act's "severity" requirement. In light of that finding, both parties should engage in settlement discussions before expending further resources on the case.

I. **Relevant Procedural History**

Petitioner filed the statutorily required medical records and affidavit (Exs. 1-6, ECF No. 6). The claim was assigned to SPU in November 2020. ECF No. 10. Following a January 2021 initial status conference (ECF No. 13), in March 2021, Respondent's preliminary review and analysis raised only the initial treatment delay (ECF No. 14).

In June 2021, Petitioner alleged ongoing injury, but an inability to obtain medical treatment due to her unrelated chronic illness and the Pandemic. She refused to convey a demand before obtaining Respondent's tentative position (ECF Nos. 19, 21). She also filed more records (Exs. 7-12, at ECF Nos. 16, 23). On January 19, 2022, Respondent filed his Rule 4(c) Report arguing for dismissal for failure to establish that the alleged injury lasted for over six months (ECF No. 27).

Petitioner thereafter filed more records (Exs. 13 – 14, at ECF Nos. 30–31), an additional sworn statement (Ex. 15, ECF No. 35), and a "Memorandum Regarding Duration of Injury" (ECF No. 36) (hereinafter "Brief"). In maintaining his objection to the severity requirement, Respondent added only analysis of the additional records. Response (ECF No. 37). The parties' dispute regarding the severity of the alleged injury is ripe for adjudication.

II. **Summary of Relevant Evidence**

At the time of vaccination, Petitioner was 38 years old. She had longstanding digestive problems and was diagnosed with Crohn's disease in 2006. Ex. 13 at 98. As of September 12, 2018, she was enrolled in Medicaid as well as Medicare A & B. Ex. 13 at 110.[3] On that date, she followed up with her gastroenterologist at the University of Chicago. *Id.* She reported abdominal pain and 6 – 10 loose bowel movements per day – but no blood or mucus in the stools; no nausea and vomiting; no rash, joint pains, or oral ulcers; good appetite; and stable weight. *Id.* at 94 – 95. Petitioner felt that she was doing

---

[3] Petitioner later confirmed that she was eligible for Medicare based on disability. Ex. 13 at 34; *see also* Social Security Administration, *Medicare Information*, https://www.ssa.gov/disabilityresearch/wi/medicare.htm (last accessed Oct. 19, 2023) ("Everyone eligible for Social Security Disability Insurance ("SSDI") benefits is also eligible for Medicare after a 12-month qualifying period.").

"relatively well" with the drug Humira, which she had been taking since 2014. *Id.* at 93, 95. The gastroenterologist recommended lab work and a colonoscopy. *Id.* at 99 – 104, 108.

Petitioner did not follow those recommendations or return to her gastroenterologist. Instead, she followed with her primary care provider ("PCP") Jason Chen, M.D., also located in Chicago. On January 2, 2019, Dr. Chen recorded that Petitioner was having frequent, bloody bowel movements assessed as a Crohn's flare, for which she should follow up with the specialist. Ex. 1 at 7. She was "on Humira, trying to get on Stelara… insurance issues." *Id.* Dr. Chen also assessed Petitioner with obesity, asthma, and acute sinusitis, and he recommended that she receive a flu vaccine. *Id.*

Dr. Chen again recorded reported instances of Petitioner experiencing Crohn's flares, and his recommendation to follow up with her specialist, on March 20, June 3, and August 19, 2019. Ex. 1 at 4 – 6. The records do not clearly document a worsening of Crohn's symptoms over time or obstacles in returning to the gastroenterologist, however, nor do they document any preexisting pain, limited range of motion, or other dysfunction in her right upper extremity.

On October 11, 2019, Petitioner received the subject flu vaccine in her right deltoid at a Walgreens in Chicago. Ex. 5 at 6. The time of vaccine administration is unclear – but phone records reflect that Petitioner initiated a five-minute-long call with Walgreens at 9:42 a.m. Ex. 10 at 2 – 3. Twenty-four (24) days post-vaccination, on November 4, 2019, Petitioner called Walgreens three times, and she received one call in return. Ex. 10 at 1.

The vaccine administration record listed Petitioner's PCP as Dr. Chen. Ex. 5 at 5. However, she did not return to him for further care. Instead, fifty-three (53) days post-vaccination, on December 2, 2019, she returned to a *prior* PCP, Pannir Selvam, M.D., also in Chicago.[4] A computerized encounter record lists a chief complaint of "Checkup/ pain in right arm," and her vitals. Ex. 3 at 4. Dr. Selvam recorded:

> **Subjective:** Patient is here for chronic pain in the RI arm after receiving the flu shot in RT arm. She is unable to move her RT arm, unable to lift or do anything that pertains to using her RT arm. She has severe neck, shoulder, and arm pain. RT arm is swollen near injection site and has been swollen for almost thirty days. She is unable to sleep on RT side due to chronic shoulder and neck pain. Physical therapy is recommended but due to patient having chronic Crohn's disease it will be difficult to attend therapy.

---

[4] Petitioner had previously seen Dr. Selvam at least several times in 2013 and once in 2016. *See* Ex. 7 at 2 – 10; PAR Questionnaire at 2.

3

> Physical therapy only recommended when Crohn's flare up is not active. Tylenol can be used for pain management but will not be effective to cope with pain. Other pain medicine will activate a Crohn's flare.
>
> **Objective:**  Needs rest medication and physical therapy as needed.

Ex. 3 at 4-5; *see also id.* at 2 (handwritten, somewhat illegible "physical examination" record). Dr. Selvam's assessment was "SIRVA. Shoulder, neck, arm pain." Ex. 3 at 5. He authorized a referral to physical and/or occupational therapy as needed. *Id.* at 3.[5]

On January 21, 2020, Petitioner returned to Dr. Selvam. The computerized patient chart lists previous diagnoses, a medications list, and current vitals. Ex. 3 at 10–11. Within the computerized encounter record, the recorded chief complaint is "checkup has a cold," but the subjective section states: "Main concern is pain abdomen." Ex. 7 at 29. The subjective section is negative for any other complaints – of note, stating: "Musculoskeletal: no joint or back pain or muscle problems." The objective examination is unremarkable – of note, stating: "Extremities: FROM, no deformities, no edema, no erythema." *Id.* There is no corresponding handwritten "physical examination" record. Dr. Selvam's assessment was "pain abdomen, [Crohn's] disease taking medication" for which Petitioner "need[ed] to see gastroenterology." *Id.*[6]

On July 28, 2020 (now over nine months post-vaccination), Petitioner met again with Dr. Selvam. The computerized patient chart lists Petitioner's medications list, past diagnoses (including diarrhea; abdominal pain; and pain in the right shoulder, arm, and elbow), and current vitals. Ex. 4 at 2-6. Within the computerized encounter record, the chief complaint is "check up." Ex. 7 at 28. There is no recorded physical examination, assessment, or plan – and no mention of then-current complaints of arm pain. Ex. 4 at 2 – 4. Dr. Selvam authorized a referral to Christ Hospital for MRIs of her right elbow and right shoulder. Ex. 4 at 8; *see also* Ex. 7 at 39 – 40.

---

[5] Petitioner potentially saw an individual named Lisa Mondragon on December 4th, and Dr. Selvam again on December 5, 2019. *See* Ex. 7 at 30 (recording encounters on those dates – but no further information). These are not addressed in her later statements. *See generally* Exs. 6, 15.

[6] In August 2022, Petitioner recalled that in January 2020, Dr. Selvam "prescribed [her] increased Prednisone to try to control [her] Crohn's symptoms," Ex. 15 at ¶ 9. That is not documented in the encounter record. Ex. 7 at 29. The electronic patient chart, on various dates, lists Prednisone 10 mg daily. *See, e.g.*, Ex. 3 at 11; Ex. 2 at 3; Ex. 4 at 4. She also reported in August 2022 that she "saw Dr. Selvam again in May of 2020 for [her] Crohn's," Ex. 15 at ¶ 11. There are no records of an encounter during that month, but on May 22, 2020, Dr. Selvam's office printed the patient chart and faxed it to Petitioner. *See* Ex. 2.

4

On that same date, however, Dr. Selvam also typed a letter "to whom it may concern." Ex. 4 at 7. He wrote that beginning "24 hours after receiving a flu shot on October 11, 2019," Petitioner had developed "severe pain in the RT arm and shoulder with limited range of motion." *Id.* He also wrote that "upon my initial physical examination evaluation on 12/02/19 SIRVA injury was diagnosed." *Id.* "Upon evaluation today the patient currently still has all of the same symptoms from that initial physical examination from the SIRVA injury. Her symptoms from the SIRVA injury are continuous and ongoing. These symptoms include Rt frozen shoulder, stiffness, severe arm and shoulder pain, limited range of motion, etc." *Id.* Due to Petitioner's ongoing Crohn's disease,[7] she was still unable to attend physical therapy and testing including MRIs, or to take any pain medication stronger than Tylenol. *Id.* Petitioner's Crohn's disease also rendered her immunocompromised and at high risk of infection during the Pandemic, "further limit[ing] her treatment options." *Id.*[8]

There is another treatment gap in the record (although the claim was initiated during it). Then, on March 2, 2021, Lisa Mondragon (whose profession is unclear, but who appears to have been affiliated with the office of Dr. Selvam) recorded Petitioner's vitals and chief complaint(s) of "right shoulder arm pain right breast lump folliculitis," but no other information. *See* Ex. 9.

Several months later, at an August 9, 2021, new patient evaluation, ophthalmologist Calvin Grant, M.D. recorded Petitioner's history of Crohn's disease and her suspicion of uveitis. Ex. 14 at 1. The record memorializes an examination of only her eyes. *Id.* at 1-2. Dr. Grant recorded an assessment of "Anterior uveitis OD episcleritis/scleritis focal no nodular secondary to Crohn's disease. Right frozen shoulder/ arm." *Id.* at 2. Two weeks later, Dr. Grant recorded that Petitioner was doing better, but she had ongoing eye issues. *Id.* at 4.

---

[7] In September 2020, Petitioner attested that "[m]y Crohn's disease is so severe that in a typical month, I have only 5-7 days where I am well enough to stand. I am for the most part bedridden by my disease and have not been able to go to physical therapy or even have the MRI [recommended by Dr. Selvam]." Ex. 6 at ¶ 9.

[8] Later, in August 2022, Petitioner recalled that Dr. Selvam wrote the letter "to explain to any future doctor or therapist the history of [her] injury and the reasons [she] had not been able to be evaluated or treated, and to explain why [she] had not followed up on his referrals for other services." Ex. 15 at ¶ 12. Petitioner denied ever telling Dr. Selvam that she was pursuing a vaccine injury claim or that she had consulted with an attorney. *Id.* at ¶ 13. But Dr. Selvam's practice had already supplied medical records to Petitioner and to her counsel, *see* Exs. 2-3, and supplied updated medical records to Petitioner's counsel on the same day that he wrote the letter, *see* Ex. 4.

Petitioner underwent lab work ordered by her gastroenterologist in late August 2021. Ex. 13 at 81-91. She received two COVID-19 vaccines in her left deltoid in September – October 2021. *Id.* at 4. She underwent further lab work in late December 2021. *Id.* at 77-80.

On January 12, 2022, Petitioner met virtually with a gastroenterology advanced practice nurse at the University of Chicago. Ex. 13 at 47. The nurse recorded that since Petitioner's last gastroenterology evaluation in 2018, she had been following with her PCP and taking Humira. *Id.* at 48. Petitioner had "started to experience more frequent flare ups since Summer 2021," with the most recent flare up occurring in late December 2021. *Id.* Petitioner was "now in-network and can follow with [her gastroenterologist." *Id.* The nurse also noted Petitioner's history of "[R]eceiv[ing] flu shot in 2019 and has been unable to use right arm since (cannot lift or bend and has pain from neck to the tip of her finger). Dx with SIRVA (shoulder injury related to vaccine administration)." *Id.* The nurse also recorded Petitioner's history of losing vision in her right eye in August 2021. *Id.* The physical exam section is unremarkable (noting the setting of a virtual visit). *Id.* at 49. The nurse's assessment and plan were focused on Crohn's – particularly a medication change from Humira to Stelara. *Id.* at 51-52.

At a February 2, 2022, new patient evaluation, Lewis Shi, M.D., an orthopedist at the University of Chicago, set forth the following history:

> [Petitioner has] right shoulder, arm, and neck pain. She states that this started in October of 2019 when she got a flu shot and then she had extreme pain afterwards, which was a severe reaction to the flu shot. She was diagnosed with a shoulder injury related to vaccine administration or SIRVA. However, her symptoms did not go away. This involved [sic? evolved?] now into her inability to move her right shoulder, right elbow, right forearm, wrist, and fingers. She has complete numbness in her radial three digits and tingling in her ulnar two digits. She has severe pain with any kind of movement. It is constantly there. She has no use of the right upper extremity whatsoever. This has been going on for two years now.

Ex. 13 at 12. Dr. Shi also recorded Petitioner's history of severe Crohn's disease and her optimism about her recent change of medication. *Id.* During the physical examination, Petitioner was unable to actively move "her elbow or forearm or wrist." *Id.* at 13. Dr. Shi's passive extension and flexion of the elbow confirmed "significant pain and guarding." *Id.* Dr. Shi assessed "A 2-year history of a right upper extremity pain, numbness, and lack of use… most likely a complex regional pain syndrome… not any kind of structural abnormality in the neck or the shoulder or the elbow… but rather a… poorly understood

6

[condition…] ha[ving] to do with some nerve irritation." *Id.* Accordingly, Dr. Shi suggested an EMG and MRI of the *neck* to rule out other pathology, and a pain management consultation. *Id.*

No further medical encounters are in evidence. In September 2022, Petitioner maintained that she was unable to seek further medical care because of her ongoing Crohn's symptoms, which were uncontrolled despite the new medication she was receiving. Ex. 15 at ¶ 16. She alleges nevertheless that she suffered a right upper extremity injury upon vaccination on October 11, 2019, which has persisted, and with no intervening incidents that could explain or worsen it. *See generally* Exs. 6, 15.

## III.   Severity

### A. Applicable Legal Standard

The petitioner carries the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][9] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Human Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4

---

[9] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

(Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

### B. Parties' Arguments

Respondent argues that the severity requirement cannot be established on this record, because "the only time Petitioner had documented right shoulder issues was… about two months after vaccination." Rule 4(c) Report at 3. Three and one-half months after vaccination, Dr. Selvam documented no shoulder complaints, and normal ROM. *Id.* And when Petitioner returned nine and one-half months after vaccination, Dr. Selvam's medical records do not document an exam, findings, or an assessment. At most, Dr. Selvam wrote a letter alleging facts about the injury, but this was prepared "two months before her petition was filed." Rule 4(c) Report at 3.

Petitioner attempts, in reaction, to defend her claim. She maintains that she had difficulty seeking medical treatment for her post-vaccination injury due to her existing Crohn's disease, which was compounded by the Pandemic. Brief at 6, 10. Her second encounter with Dr. Selvam in January 2020 was focused on a Crohn's flare, and the electronic medical record's reference to full ROM was potentially "cut and pasted, or automatically included from office software." Brief at 3 (comparing Ex. 7 at 5, 27, 29); *see also id.* at 6-7, 8-10. Petitioner also contends that Dr. Selvam wrote the subsequent letter to inform future medical providers, not to support her legal claim. *Id.* at 7, 10-11. And the orthopedist Dr. Shi's history and assessment support the conclusion that her injury persisted for over two years.

Respondent adds in reaction only that Dr. Shi diagnosed "chronic regional pain syndrome, not SIRVA, or adhesive capsulitis, or any of the other conditions frequently associated with a SRIVA claim." Response at 3.

### C. Analysis and Conclusion Regarding Severity

The parties have agreed to a determination of the severity issue based on the record as it stands. That record is certainly sparse – but it reflects a longstanding history of Crohn's disease which rendered Petitioner disabled and generally unable to leave her home. Dr. Selvam documented these limitations on seeking treatment for the injury alleged, beginning at the first encounter about two months after vaccination. I also recognize the Pandemic's escalation about five months after vaccination, and that Petitioner was immunocompromised due to her Crohn's disease, and therefore at particular risk of infection – which is also documented by Dr. Selvam. Respondent does not give sufficient (if any) weight to this context, in analyzing severity.

The record from three and one-half months after vaccination is facially problematic, because it does not confirm the post-vaccination injury was ongoing. Indeed, it hardly references arm pain at all. However, unlike at the previous encounter, there is no handwritten record verifying that a physical examination was actually conducted. The electronic medical record (suggesting full ROM) is indeed very similar to previous dates – and its contents were therefore potentially pre-filled or carried forward by the software as Petitioner suggests. Brief at 3. This document is also internally inconsistent, first stating a chief complaint of a "cold," then primarily addressing Crohn's symptoms. I therefore cannot find it warrants substantial weight against a finding of severity.

The next treater encounter occurred nine and one-half months after vaccination, and thus came after the severity "deadline." It is not credible that Dr. Selvam was unaware of Petitioner's anticipated legal claim at this time; his office faxed documentation to her counsel that same day and had done so in the past. *See* n. 8 (citing Exs. 2-4). However, Dr. Selvam's letter states that a repeat physical examination confirmed "all of the same symptoms" as at their previous encounter. Ex. 4 at 7. That description is entitled to some weight, despite not appearing within a contemporaneous medical record – which Dr. Selvam and his practice had issues creating and/or retaining, based on the available evidence. *See, e.g.*, Ex. 3 at 1, Ex. 7 at 1 (referencing missing and lost records).

Petitioner otherwise reported a consistent history to four other providers - most importantly the orthopedist Dr. Shi, who objectively documented right shoulder, arm, and neck pain and limited ROM, consistent with that documented by Dr. Selvam over two years earlier. There is no evidence that these symptoms resolved and then recurred for some other reason.

Thus, while severity may represent a close call, it tips in Petitioner's favor. Of course, the relatively sparse evidentiary record on this topic *strongly* warrants against a

high pain and suffering award in this case – and Petitioner must act accordingly going forward.

### IV.     Additional Preliminary Analysis Bearing on Entitlement

The record contains preponderant evidence of a post-vaccination right upper extremity injury persisting for over six months – but that injury is unlikely to meet the Table SIRVA criteria. First, a Table SIRVA requires "pain and reduced range of motion *limited to the shoulder* in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (emphasis added). Notwithstanding Petitioner and/or Dr. Selvam's introduction of the term SIRVA at the first encounter two months post-vaccination, she was documented to have pain not just in the vaccinated right shoulder, but throughout the right arm and in the neck. Ex. 3 at 3-5. This record does not indicate that Petitioner had pain predominantly in the shoulder which radiated out to some limited extent to the arm and neck. Nor does the record indicate some alternative explanation for the other areas of pain which can be separated out from the alleged SIRVA. Subsequent records are consistent on this issue. *See, e.g.*, Ex. 4 at 8, Ex. 7 at 39-40 (authorizing MRI of the right elbow); Ex. 13 at 48 (history of pain and dysfunction "from neck to the tip of her finger"); Ex. 13 at 12 (describing "right shoulder, arm, and neck pain").

Second, a Table SIRVA requires an onset of shoulder pain within 48 hours after vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B); (c)(10)(ii). Here, the first medical record, from 53 days post-vaccination, describes that the pain began non-specifically "after" vaccination, and injection site swelling present "for almost thirty days." Ex. 3 at 4. This record could potentially support an onset outside of the Table timeframe. The records of phone calls to the pharmacy are contemporaneous but only circumstantial evidence regarding onset. However, Petitioner may be able to furnish fact witness affidavits, any other available evidence, and briefing establishing onset within 48 hours. Alternatively, she may allege an alternative onset as part of a causation-in-fact claim (in light of the above observations about her injuries being potentially not limited to the shoulder).

### Conclusion

Given that the parties' dispute regarding severity has been resolved in Petitioner's favor, she should now convey a demand – which must be limited to a *modest* pain and suffering request, plus reimbursement of any existing Medicaid lien.[10] In formulating her demand, Petitioner must acknowledge the very sparse documentation of her injury and the obstacles to a Table SIRVA claim. Petitioner and Respondent are both encouraged

---

[10] *See, e.g.*, PAR Questionnaire (ECF No. 7) at 1 (noting Medicaid coverage); Ex. 13 at 110.

to pursue a reasonable settlement of this claim within approximately the next 90 days, before expending additional resources (either within or outside of SPU).

**Within 45 days, by no later than Monday, December 18, 2023, Petitioner shall file a Joint Status Report updating on the prospects for informal resolution.** The status report shall confirm whether any Medicaid lien exists, and if so, state the date by which Petitioner anticipates providing Respondent a letter from the appropriate state agency verifying the amount of the lien. The status report shall also confirm the date on which Petitioner conveyed a demand for pain and suffering. The status report shall also state whether Respondent is willing to engage in settlement discussions, and if so, state the date on which Respondent responded, or intends to respond, to the demand.

**If the parties confirm that informal resolution is not possible, within 30 days thereafter, Petitioner shall show cause why her claim should not be dismissed for insufficient proof of a Table SIRVA and/or injuries caused in fact by the subject vaccine.** Petitioner's failure to respond to this or other orders issued in this action, as well as failure to file evidence required to support his claim, will be interpreted as a failure to prosecute resulting in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), *aff'd*, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master