# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1189V**
**Filed: August 10, 2026**

| | |
|---|---|
| SEMECA JOHNSON,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner |

*Edward Kraus, Kraus Law Group, LLC, Chicago, IL, for petitioner.*
*Crystal Fialkowski, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On September 14, 2020, petitioner, Semeca Johnson, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq*. (2012), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza vaccination she received on October 11, 2019. (ECF No. 1.) On December 17, 2024, petitioner was found entitled to compensation. (ECF No. 60.)

After petitioner was found entitled to compensation, the parties were unable to informally resolve the appropriate amount of compensation. The issue of damages was fully briefed. (ECF Nos. 73-74, 76.) Petitioner requested $90,000.00 in compensation for her actual pain, suffering, and emotional distress. However, respondent instead proposed an award of $40,000.00. No other damages were asserted. An oral argument was held on July 23, 2026, and the undersigned issued an oral ruling as part of that proceeding. An excerpt of the resulting transcript including the oral ruling is attached hereto. In light of the preceding, I have determined that the parties have had a

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

full and fair opportunity to present their cases and that it is appropriate to resolve damages on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). Considering the arguments raised by the parties and the record as a whole, I find for the reasons discussed in the attached transcript that a reasonable and appropriate award for petitioner's actual pain and suffering is $90,000.00.

Therefore, **I award petitioner a lump sum payment of $90,000.00 representing compensation for actual pain and suffering, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner**. This amount represents compensation for all damages available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[2]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

SPECIAL MASTER'S RULING

THE COURT: So, in ruling on damages, I incorporate by reference to legal standard I articulated in my prior decision in Baker v. Secretary of Health and Human Services, which is Number 21-1971V, 2025 WL 1695810 at page 5. It's a Federal Court, Court of Federal Claims Special Master decision of May 23rd, 2025.

Just to very briefly summarize, there's no formula to assess pain and suffering. Three factors are typically considered, which are severity, duration, and awareness of the injury. In the context of SIRVA, only severity and duration are really at issue. It is appropriate for Special Masters to consider other prior decisions in determining an award for pain and suffering, but those prior determinations are not binding.

So, just to briefly note that Petitioner cited the following cases as potentially comparable, Cooper 15-1387V, which awarded $110,000. Petitioner characterized Cooper as experiencing eight months of significant pain followed by two years and nine months of lesser pain and reduced range of motion, and notably, although the pain was severe, it was not confirmed by any MRI finding. Accetta, 17-1731V, awarded $95,000. Petitioner distinguishes this case because Accetta Petitioner had significant gaps in treatment that were voluntary and indicative of the pain being manageable.

Respondent cites Cote, 21-307V, awarding $40,000. Respondent noted that the Petitioner alleged a four-and-a-half-year injury, but that was rejected as uncorroborated by the medical records. Turnquest, 21-65V, awarded $30,000, and Respondent advances it for the same basic proposition, as well as Ramos, 18-1005V, awarding $40,000, which had a four-month period of treatment and significant recovery by 13 months.

So, I'm mindful of the prior decisions that the parties have cited and, in fact, the whole universe of prior SIRVA awards, but I'm not relying on any one particular decision as comparable. Instead, I'm basing my conclusion on a review of all the prior awards, the arguments presented by the parties, and the totality of the evidentiary record. As I noted, the primary considerations inform the pain and suffering in SIRVA cases, the severity and duration of the shoulder pain and reduced range of motion. There are a lot of different aspects of a Petitioner's medical history that can speak to those, and to be sure, usually that's going to involve considerations of medical evaluations conducted during active treatment, modalities of treatment that are relied on, and specific findings that support or corroborate the pain and suffering that's occurring.

However, this case, I think, defies easy comparison. I'm not persuaded by Respondent's comparison to

Cote, Turnquest, or Ramos. I think Respondent acknowledges that the central aspect of those cases was that the Special Master rejected the notion that the injury was as long or as severe as the Petitioner alleged due to the lack of support in medical records. Importantly, those cases involve situations in which the Petitioner did not articulate any clear barriers to treatment. The key point here, I think, is that an award of pain and suffering is not coextensive with the treatment history. It is compensation for what the Petitioner actually experienced. The objective evidence from medical records is corroborative rather than determinative.

In the finding of fact in this particular case, the Chief Special Master has already credited the Petitioner's medical records as preponderantly documenting, even if barely, an ongoing shoulder injury for at least two years, and I agree with that conclusion. In fact, as Mr. Kraus has noted during oral argument, updated records since that time. Respondent's brief also agrees that Petitioner's medical records confirm that her significant and chronic Crohn's disease interfered with her ability to access care. And I'm noting ECF Number 74, page 3, quoting Exhibit 3, page 4.

Respondent's brief further agrees that Petitioner's primary care provider felt that Petitioner's

condition had likely evolved to include frozen shoulder, which, as Mr. Kraus noted during the oral argument, citing Dr. Srikumaran, can arise from a lack of treatment. Again, that's Respondent's brief at the same page, citing Exhibit 4, page 8.

I do take into account Respondent's observation the Petitioner has not demonstrated a complete inability to seek care, and most notably that telehealth encounters became much more prevalent during the COVID pandemic. However, I think there is sufficient evidence that Petitioner's Crohn's disease interfered with her care, and I don't think the degree of treatment Petitioner sought is directly reflective of the severity of her pain and suffering.

Also, as I suggested during the course of the oral argument, I do find the prior decision in Desrosiers to be significant with regard to the significance that the lack of the ability to treat with more than Tylenol would have on pain and suffering. I explained the circumstances of that case during the oral argument, but I note here that we have a specific notation from the primary care provider specifically cautioning Petitioner against taking anything other than Tylenol because it might activate a Crohn's flare, and that was at Exhibit 3, page 4.

So, ultimately, putting a dollar value on a

person's pain and suffering is always an exercise in rough justice. That is especially true in this case where I am persuaded that there is a disconnect between the limited scope of the available treatment records and the circumstances reflected by those limited treatment records. Despite the limited treatment records, I conclude that there is sufficient evidence to preponderantly demonstrate that the severity and duration of Petitioner's pain and suffering is consistent at least with a median SIRVA. Therefore, an award of $90,000, as requested by Petitioner, is reasonable and appropriate in this case.

I do, in closing, want to stress that this is an unusual case that presented what I consider to be persuasive extenuating circumstances to explain Petitioner's limited treatment history, and my decision is informed by the fact that, as Petitioner notes in her reply citing to the Cloer case, that this Program is meant to compensate petitioners quickly, easily, and with certainty and generosity, and without creating full-blown tort litigation in the Program.

So, I want to stress that I am distinguishing the prior cases, such as Cote, Turnquest, and Ramos, rather than disagreeing with their reasoning. This decision in no way calls into question the fact that in most circumstances a limited treatment history will be strongly suggestive of limited pain and suffering. And that is the extent of my

ruling, and I'm going to go ahead and go off the record.

(Whereupon, at 10:31 a.m., the proceedings were adjourned.)